RUTH BANKS v. EMORY LEE SHEPARD AND MARS HILL-WEAVER-VILLE BUS LINES, INC.

(Filed 9 March, 1949.)

**1. Automobiles § 8d—**

The mere fact that the driver of a bus stops such vehicle on the traveled portion of the highway for the purpose of receiving or discharging a passenger, nothing else appearing, will not be held to be a violation of G.S. 20-161.

**2. Same—**

The stopping of a bus on the traveled portion of the highway to discharge a passenger without giving the signal required by statute is negligence, and ordinarily it is for the jury to determine whether such negligence is the proximate cause of injury. G.S. 20-161.

**3. Automobiles § 18h (2)—Evidence held for jury as to whether mechanical signal as required by statute was given before stopping bus.**

Plaintiff, a passenger in a bus, was injured when a truck following the bus collided with the rear thereof when the bus was stopped on the highway to permit a passenger to alight. Defendant appellant admitted that its driver gave no hand signal but introduced evidence of a rule of the Utilities Commission as to the required lighting equipment on motor

vehicles and evidence that the bus had been inspected and approved by an inspector of the Utilities Commission, 'and certificate of title issued by the Department of Motor Vehicles, together with testimony of the driver that the stop lights were on only when the brakes were on and then only if one stopped the bus suddenly, and that he slowed down gradually before stopping the bus. *Held:* The evidence is insufficient to show as a matter of law that a mechanical or electrical signal as required by G.S. 20-154 was given, and appellant's motion to nonsuit was properly denied.

**4. Negligence §§ 7, 20—**

An instruction upon the question of intervening negligence to the effect that if the injury was a natural and probable consequence of the original negligence and could have been foreseen as a probable consequence thereof, it would not be insulated by intervening negligence, must be held for reversible error in failing to charge that the original negligence would be insulated if it would not have caused injury except for the intervention of some distinct wrongful act or omission on the part of another or others.

**5. Trial § 31d—**

A charge that the burden of proof resting on plaintiff required her to introduce evidence tending to prove "the allegation," must be held for reversible error, since the burden of proof relates to the issues rather than the allegations out of which they arise, and the burden is on plaintiff to prove by the greater weight of the evidence the affirmative of the issues forming the basis of her cause of action.

APPEAL by defendant, Mars Hill-Weaverville Bus Line, Inc., from *McSwain, Special Judge,* at September Term, 1948, of BUNCOMBE.

Civil action for personal injuries sustained by the plaintiff, in a rear-end collision between a bus owned and operated by the defendant, Mars Hill-Weaverville Bus Lines, Inc., and a truck owned and operated by the defendant, Emory Lee Shepard.

On 18 November, 1947, the plaintiff became a passenger on appellant's bus, scheduled to leave Asheville at 2:30 p.m., for Weaverville, but which actually left Asheville about 2:54 p.m. She paid her fare and was a passenger for hire. About 150 feet south of Stoney Knob Grocery Store the highway passes over the crest of a hill; and before the driver reached the crest of this hill he was traveling 40 or 45 miles per hour. The bus was being followed by a one and a half ton Chevrolet truck, driven by the defendant Shepard. It was raining and the pavement was wet. The road was 24 feet wide with a center line.

According to the plaintiff's evidence, just as the bus was approaching the Stoney Knob Grocery Store, while being operated at approximately 30 miles per hour, a passenger sitting on the front seat next to the door of the bus gave a signal to stop; immediately after the signal was given the bus stopped suddenly within 4 or 5 feet. The door was open when the bus stopped and the passenger who was standing at the door, alighted quickly and the truck of the defendant Shepard collided with the bus,

throwing a number of passengers to the floor of the bus, unseating the plaintiff and throwing her to the floor, breaking her neck. The plaintiff offered testimony tending to show that the bus stopped on the traveled portion of the highway and that after the collision the truck and the rear of the bus were across the center line of the highway and the right front wheel of the bus was about 2 feet from the right edge of the pavement.

Miss Jean Cheek, one of the plaintiff's witnesses, testified that when the Roberts girl rang the bell to get off, she moved to the front of the bus and got off quickly, and something hit the back of the bus and she was knocked unconscious.

The defendant bus company admitted that no hand signal was given by the driver of the bus before stopping to discharge the passenger, that the bus was so constructed that a hand signal could not be given, but offered evidence tending to show that an electrical signal was given. The driver of the bus testified the stop lights are on only when the brakes are on and if you stop the bus suddenly, the brakes are on just the length of time that you are stopping the bus. He also testified that he slowed down gradually before stopping and that the truck which was following him was from 200 to 300 feet behind him when he stopped; that when he stopped the bus its right front and rear wheels were off of the hard surface resting on the shoulder of the road.

Miss Roberts, a witness for the defendant, testified that when the bus stopped she "stepped down three steps from the floor of the bus and had taken about two steps on the ground when the crash occurred. . . . The bus drove up and stopped. It was misting. I didn't have an umbrella and I didn't have a raincoat. I was in a hurry to get from the bus to home. I had gotten off the bus, taken two steps . . . when I heard the collision."

The usual motion for judgment as of nonsuit was made and renewed in apt time, and overruled. The jury answered the issues of negligence and damages against both defendants, and from the judgment entered thereon the defendant, Mars Hill-Weaverville Bus Lines, Inc., appeals and assigns error.

*E. L. Loftin and Jones & Ward for plaintiff.*

*Smathers & Meekins and Geo. Pennell for defendant, Mars Hill-Weaverville Bus Lines, Inc.*

DENNY, J. The appellant excepts and assigns as error the refusal of the court below to allow its motion for judgment as of nonsuit.

According to the plaintiff's testimony the appellant's driver stopped the bus within four or five feet, after the bell rang, indicating a passenger wanted to get off the bus. The evidence also tends to show that the bus

was stopped on the hard surface or traveled portion of the highway and that the collision occurred within a matter of seconds after the bus stopped.

The mere fact that the driver of a bus stops such vehicle on the traveled portion of the highway, for the purpose of receiving or discharging a passenger, nothing else appearing, will not be held to be a violation of G.S. 20-161. *Leary v. Bus Co.* 220 N.C. 745, 18 S.E. 2d 426; *Peoples v. Fulk,* 220 N.C. 635, 18 S.E. 2d 147; *Conley v. Pearce-Young-Angel Co.,* 224 N.C. 211, 29 S.E. 2d 740; *Morgan v. Coach Co.,* 228 N.C. 280, 45 S.E. 2d 339. Even so, such stop must be made with due regard to the provisions of G.S. 20-154, the pertinent parts of which read as follows: "(a) The driver of any vehicle upon a highway before starting, stopping or turning from a direct line shall first see that such movement can be made in safety, . . . and whenever the operation of any other vehicle may be affected by such movement, shall give a signal as required in this section, plainly visible to the driver of such other vehicle, of the intention to make such movement. (b) The signal herein required shall be given by means of the hand and arm in the manner herein specified, or by any approved mechanical or electrical signal device, except that when a vehicle is so constructed or loaded as to prevent the hand and arm signal from being visible, both to the front and rear, the signal shall be given by a device of a type which has been approved by the department. . . . All signals to be given from left side of vehicle during last fifty feet traveled."

It was admitted in the trial below, that when the bus was stopped to discharge the passenger at the time of the collision complained of herein, no hand signal was given by the driver of the bus. It then became a pertinent question as to whether or not a proper signal was given by a mechanical or electrical signal device which had been approved by the Department of Motor Vehicles, as required by the above statute.

The appellant offered in evidence Rule 34, of the Utilities Commission, describing the required lighting equipment on motor vehicles used by motor vehicle carriers, and offered evidence tending to show that the bus involved in this collision had been inspected and approved by an inspector of the Utilities Commission. It also offered in evidence its certificate of title issued by the Department of Motor Vehicles.

We do not think this evidence sufficient to show compliance with the statute. *Barnhill, J.,* in speaking for the Court in *Conley v. Pearce-Young-Angel Co., supra,* said: "Mere stopping on the highway is not prohibited by law, and the fact of stopping in itself does not constitute negligence. *Leary v. Bus Corp.,* 220 N.C. 745, 18 S.E. 2d 426. It is stopping without giving a signal by hand and arm 'or any approved mechanical or electrical signaling device' approved by the Department

of Motor Vehicles *whenever the operation of any other vehicle may be affected by such movement.* G.S. 20-154."

The failure to give a signal as required by statute, before stopping a motor vehicle on a public highway, is negligence, *Betchler v. Bracken,* 218 N.C. 515, 11 S.E. 2d 721; and ordinarily it is for the jury to determine whether or not such negligence was the proximate cause of the injury, *Holland v. Strader,* 216 N.C. 436, 5 S.E. 2d 311. *Mason v. Johnston,* 215 N.C. 95, 1 S.E. 2d 379; *Murphy v. Asheville-Knoxville Coach Co.,* 200 N.C. 92, 156 S.E. 550.

We think the evidence adduced in the trial below, when considered in the light most favorable to the plaintiff, is sufficient to carry the case to the jury, and we so hold. *Pappas v. Crist,* 223 N.C. 265, 25 S.E. 2d 850; *Gregory v. Ins. Co.,* 223 N.C. 124, 25 S.E. 2d 398.

The appellant also excepts and assigns as error the following portion of his Honor's charge: "Now, the law recognizes the doctrine of intervening cause but the Court instructs you that an intervening cause will not relieve from liability when the prior or first negligence was the efficient cause of the injury. The test is not to be found in the number of intervening events but in their character and in the natural connection between the original wrong done and the injurious consequence and if the injury is the natural and probable consequence of the original negligent act or omission and is such as might reasonably have been foreseen as probable, the original wrongdoer is liable notwithstanding an intervening act or event. The Court has said that the rule applying in deciding this question is, was there an unbroken connection between the wrongful act and the injury, the original wrongful act. Was it a continuous operation? Do the facts make a natural whole or was there a new and intervening cause between the wrong and the injury? It must appear that the injury was the natural and proximate consequence of the negligence and that it ought to have been foreseen in the light of attending circumstances. I think that explains to you the law of general negligence and the law of concurrent negligence, and intervening causes."

The vice complained of lies in the fact that the jury was not instructed as to when intervening negligence insulates the original negligent act and becomes the sole proximate cause of the injury. If an original act of negligence "only becomes injurious in consequence of the intervention of some distinct wrongful act or omission on the part of another or others, the injury is to be imputed to the second wrong as the proximate cause, and not to the first or more remote cause. Cooley on Torts, sec. 50." *Insurance Co. v. Stadiem,* 223 N.C. 49, 25 S.E. 2d 202; *Spease v. Butner,* 217 N.C. 82, 6 S.E. 2d 808. However, whether the negligent act of a defendant may be insulated as a matter of law by an independent act of another, depends on whether or not the original actor "ought to have

foreseen in the exercise of reasonable prevision or in the light of attend-
ing circumstances" that the plaintiff or some other person might be
injured as a result and probable consequence of the negligence act. *Spease
v. Butner, supra; Warner v. Lazarus,* 229 N.C. 27, 47 S.E. 2d 496. We
think the exception is well taken and must be upheld.

The appellant likewise excepted to the following portion of the charge:
"Burden of proof simply means that it is the duty of the plaintiff in
this case to produce evidence tending to prove the allegation. So, the
burden of proof means that it is the duty of the plaintiff to offer evidence
in this case tending to prove the allegation."

Burden of proof means "the necessity or duty of affirmatively proving
a fact or facts in dispute on an issue raised between the parties in a
cause." Black's Law Dictionary, 3rd Ed., p. 258.

There is a substantial difference between offering evidence which
merely tends to prove an allegation and offering evidence sufficient to
carry the burden of proof on the issues raised by the pleadings.

In the instant case, the burden of proof on the issues of negligence
and damages, was upon the plaintiff; and the burden rested upon her to
prove negligence on the part of the defendants and to establish her dam-
ages by the greater weight of the evidence. The issues are raised by
the pleadings and the burden of proof relates to the issues, rather than
to the allegations out of which they arose. It is quite possible the jury
may have been confused as to the measure of proof required. We think
the instruction as given was prejudicial to the appellant.

Several other exceptions appear to have some merit, but since there
must be a new trial, we deem it unnecessary to discuss them.

The appellant is entitled to a new trial, and it is so ordered.

New trial.